942 A.2d 48

ESTATE OF F.W.; R.W., AN INFANT BY HIS GUARDIAN AD LITEM, M.W.; T.H., AN INFANT BY HIS GUARDIAN AD LITEM, M.W.; AND M.W., INDIVIDUALLY, PLAINTIFFS, v. STATE OF NEW JERSEY, DIVISION OF YOUTH AND FAMILY SERVICES, DEFENDANT-RESPONDENT, AND GWENDOLYN HARRIS, NEWARK PUBLIC SCHOOLS AND/OR NEWARK BOARD OF EDUCATION, MARION BOLDEN, AND CITY OF NEWARK, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued October 29, 2007—Decided February 22, 2008.

346

Before Judges S.L. REISNER, GILROY and BAXTER.

*Daniel J. Pomeroy* argued the cause for appellant Javerbaum Wurgaft Hicks & Zarin (*Mortenson and Pomeroy,* attorneys; *Mr. Pomeroy and Karen E. Heller,* on the brief).

*Karen L. Jordan,* Deputy Attorney General, argued the cause for respondent (*Anne Milgram,* Attorney General, attorney; *Lewis A. Scheindlin,* Assistant Attorney General, of counsel; *Ms. Jordan,* on the brief).

The opinion of the court was delivered by

GILROY, J.A.D.

The law firm of Javerbaum Wurgaft Hicks & Zarin appeals from the March 30, 2006, order of the Law Division, which denied its motion for an order setting a reasonable attorney fee on that part of a personal injury recovery exceeding $2,000,000, pursuant to *Rule* 1:21–7(c)(5). The law firm also appeals from the order of May 26, 2006, which denied its motion for reconsideration. The issue presented on appeal requires us to review the standard to be applied by the trial court when determining a reasonable attorney fee on a personal injury recovery in excess of $2,000,000. Because we determine that the trial court mistakenly applied the wrong standard, placing the burden of proof on the law firm to establish that the contingent fee recovered on the first $2,000,000 of the settlement was inadequate, we reverse and remand the matter for further proceedings consistent with this opinion.

## I.

This action arises from the failure of the Division of Youth and Family Services (DYFS) to properly provide for the care and custody of the three minor boys, F.W., R.W., and T.H. (collectively, the plaintiffs).[1] Plaintiffs suffered abuse and neglect by their mother. They also suffered severe abuse and neglect by their mother's cousin and the cousin's family members, after the mother left her boys in her cousin's care. F.W. was killed by the cousin's son. The cousin then hid F.W.'s body and kept R.W. and T.H. locked in the basement of her home for an extended period of time

---

[1] All named parties in the action, other than the three minor boys and DYFS, were dismissed or removed from the action by various orders of the trial court.

without proper food or bathroom facilities. In early January 2003, when R.W. and T.H. were discovered locked in the basement near starvation, they were seven and four years old, respectively. In December 2004, following a referral from another attorney, the law firm filed a complaint on behalf of plaintiffs, asserting negligence against DYFS and other named defendants.

Because of an inherent conflict, the trial court removed the mother from serving in a representative capacity on behalf of the Estate of F.W., and the two surviving boys. On August 5, 2005, the court appointed two attorneys to serve individually as the guardians ad litem for R.W. and T.H. By the same order, the court also appointed a third attorney to serve as the administrator ad prosequendum for the Estate of F.W. The attorneys executed contingent fee retainer agreements in accordance with *Rule* 1:21–7(c) in their representative capacities on behalf of the estate and the two surviving boys. Pursuant to the retainer agreements, the law firm advanced all costs and expenses to prosecute the action.

On October 25, 2005, the parties mediated the matter and reached a settlement in the gross amount of $7,500,000, allocated as follows: the claim of the Estate of F.W. was settled for $1,000,000; and the claims of R.W. and T.H. were settled for $2,750,000 and $3,750,000, respectively. In addition, the State of New Jersey waived its lien for medical services that had been provided to the boys under the Medicaid Program, until special needs trusts are funded with the settlement proceeds. The past medical costs were approximately $275,000 for each of the two surviving children.

On February 10, 2006, following a "friendly proceeding" to determine whether the settlements were fair and reasonable, *R.* 4:44–3, an order was entered approving the settlements and directing counsel to file a separate application for an order setting reasonable attorneys' fees and costs. On February 13, 2006, the law firm filed a motion pursuant to *Rule* 1:21–7(c)(5), seeking a determination as to reasonable attorneys' fees on the amount recovered on behalf of the two surviving boys in excess of

$2,000,000.[2]  In support of the motion, the law firm submitted a certification of counsel, stating that the law firm's efforts in prosecuting the matter resulted in a favorable resolution on behalf of the two boys, and requested a 20% attorney fee on the amount recovered in excess of $2,000,000 on behalf of the boys.[3]  The application also included certifications of the guardians ad litem of the boys supporting the fee request.  The motion was opposed by DYFS.

On March 30, 2006, the trial judge entered an order, supported by a written opinion, determining that the law firm was not entitled to an attorney fee on the amount recovered in excess of $2,000,000.[4]  As to the denial of the application, the judge stated:

[T]here is a complete absence of any documentation of hours expended.  This lack, under the circumstances presented here, is fatal to [the law firm's] application for additional fees.  Its claims of inadequacy of fees must be substantiated and thoroughly documented and cannot rest merely on the claim of a successful result in a generally difficult type of litigation without a showing of the particular difficulty of a specific litigation in question. . . .

. . . .

Increases beyond fees provided in *R.* 1:21-7(c) must be reserved for truly exceptional situations as where new law is established on appeal; or where a trial, appeal, and re-trial are required.  Another situation that might warrant enhanced fees is a successfully negotiated settlement that produces documented tax-savings and security protection. . . .

. . . .

---

[2] The law firm's fee on the $1,000,000 recovered in settlement of the wrongful death claim of the Estate of F.W. is not an issue on this appeal.  Nor is the fee on the first $2,000,000 of the recovery on behalf of the two boys.

[3] Because the law firm's representation of the two surviving boys involved claims "aris[ing] out of the same transaction or set of acts or involve[d] substantially identical liability issues," the law firm requested that its fee be calculated on the basis of the aggregate sum of the settlements, rather than individually.  *R.* 1:21-7(i).

[4] Because the law firm had not submitted a certification of the expenditures incurred in prosecuting the action, the trial judge was not able to calculate the amount of the law firm's fee on the first $2,000,000 recovered, but rather set a formula to be followed, subject to the law firm submitting a certification of expenses on notice to all parties.

[T]he record here does not demonstrate why the services rendered were so exceptional as to entitle the Plaintiffs' attorneys to an additional fee sought in the range of over a million dollars. There's nothing to indicate that the work performed was more difficult or time-consuming than that normally encountered in such an action. The bulk of the investigation was completed in less than four months, between the date the Complaint was filed and the date the Answer was filed. There was almost no motion practice. No depositions were taken. No interrogatories were served. This matter settled in a single mediation session. The State did not contest liability, and no trial or appeal was involved. The inescapable conclusion, especially in the face of the complete absence of time records, is that extensive time and labor were not required by Plaintiffs' counsel.

The permissible fee under R. 1:21–7(c) is adequate; the Plaintiffs' attorneys have not demonstrated that they are entitled to an additional fee under R. 1:21–7(f) for the amount recovered in excess of $2,000,000....

[ (citations omitted).]

On April 18, 2006, the law firm moved for reconsideration. In support of its motion, the law firm submitted certifications from six personal injury attorneys, stating that attorneys litigating personal injury matters, pursuant to a contingent fee agreement, do not uniformly maintain time records of the hours devoted to prosecuting the actions. The attorneys also certified that in every instance in which their firms had applied to the court to set a reasonable fee on the amount recovered in excess of $2,000,000, a fee had been awarded, usually in a range from 20% to 33%. On May 26, 2006, the trial judge issued a written opinion and entered a confirming order the same day, stating in part:

[A]warding a fee on recovery in excess of two million dollars requires the application of the factors in R.P.C. 1.5. The most critical factor, although not the only one, is the time involved. The cases cited involved personal injury attorneys who either kept, or made good faith reconstructions of time records. No doubt it is the usual practice of a plaintiff's firm not to keep time records in this type of case. However, when a firm seeks a reasonable fee above a two million dollar recovery, or even an enhanced fee, it is the firm's burden to satisfy the Court of the appropriateness of awarding a fee.

. . . .

[T]he awarding of a reasonable fee must take into account the total fee earned. Here, without any certification as to hours, the firm has earned a fee on the first two million dollars pursuant to Court Rule in excess of $540,000. Even if they spent 200 hours in this case, a number that is hard to imagine, given the paucity of the description of work done, that would equate to a fee of $2,700 per hour. I am well aware that contingency fees are not hourly fees, but if the contrast is that

striking, then the reasonableness of awarding an additional fee must be called into question.

. . . .

The inescapable problem here is that the firm apparently needed to expend very few hours in achieving the result. There was almost no motion or discovery practice, and the case settled at the first mediation session. While the facts were horrific, no novel questions of law were presented. There's absolutely nothing in the papers to suggest that the firm devoted any significant time to this case. The firm argues that I am somehow punishing it for settling early in the case. I do not blithely or lightly reduce an attorney's expected recovery. However, I cannot reward a firm wildly out of proportion to the *RPC* factors, for doing the job they were supposed to do, to the detriment of the clients.

## On appeal, the law firm argues:

*POINT I.*

THE LOWER COURT'S REFUSAL TO PERMIT ANY FEE ON AMOUNTS RECOVERED IN EXCESS OF $2,000,000 WAS PATENTLY UNREASONABLE AND MUST BE REVERSED.

A.  THE STRONG PUBLIC INTEREST AND TRADE–OFFS INHERENT IN CONTINGENT FEE ARRANGEMENTS PUTS THOSE AGREEMENTS INTO A UNIQUE CATEGORY TO WHICH ORDINARY STANDARDS OF REASONABLENESS CANNOT BE UNIFORMLY APPLIED.

- THE PLAINTIFF'S TRADE–OFF: POTENTIALLY LARGER FEE FOR THE ABILITY TO BRING SUIT.
- THE ATTORNEY'S TRADE–OFF: RISK OF OUT–OF–POCKET LOSS FOR POTENTIALLY LARGER FEE.
- THE LOWER COURT MISAPPLIED THE *RULE* AND THE *RPC* FACTORS.
- THE LOWER COURT IMPROPERLY CREDITED THE ARGUMENTS OF DYFS, A PARTY ENTIRELY LACKING STANDING WITH RESPECT TO THE ATTORNEYS' FEES.
- THE IMPACT OF THE LOWER COURT'S RULING.

## II.

We first address the law firm's challenge to DYFS's standing to contest its fee application. The law firm argues that DYFS lacks standing to contest the fee application because the issue concerns a matter of contract between the guardians ad litem of the two boys and the law firm. The law firm contends that the interests of the two boys were more than adequately protected by the guardians ad litem, experienced attorneys appointed by the

court. We reject the argument and conclude that DYFS has standing to be heard on the appeal.

Generally, when one questions whether a party has standing in a legal proceeding, the term "refers to the [party's] ability or entitlement to maintain an action before the court." *N.J. Citizen Action v. Riviera Motel Corp.*, 296 *N.J.Super.* 402, 409, 686 *A.*2d 1265 (App.Div.), *certif. granted*, 152 *N.J.* 13, 702 *A.*2d 352 (1997), *and appeal dismissed as moot*, 152 *N.J.* 361, 704 *A.*2d 1297 (1998). We conclude, however, that the same principles of "standing" govern the right of a party to pursue a collateral issue that originates from a trial court proceeding in which the party had participated—here, the *Rule* 4:44–3 friendly hearing.

To have standing to raise an issue, "a party must have 'a sufficient stake and real adverseness with respect to the subject matter of the litigation.'" *Triffin v. Somerset Valley Bank*, 343 *N.J.Super.* 73, 81, 777 *A.*2d 993 (App.Div.2001) (quoting *In re Adoption of Baby T.*, 160 *N.J.* 332, 340, 734 *A.*2d 304 (1999)). "Standing has been broadly construed in New Jersey as 'our courts have considered the threshold for standing to be fairly low.'" *Ibid.* (quoting *Reaves v. Egg Harbor Twp.*, 277 *N.J.Super.* 360, 366, 649 *A.*2d 904 (Ch.Div.1994)). Although, "a litigant may not [ordinarily] claim standing to assert the rights of a third party," *Jersey Shore Med. Ctr. v. Estate of Baum*, 84 *N.J.* 137, 144, 417 *A.*2d 1003 (1980), "standing to assert the rights of third parties is appropriate if the litigant can show sufficient personal stake and adverseness so that the [c]ourt is not asked to render an advisory opinion." *Ibid.*

Here, the interpretation of the contingent fee rule, as well as the fairness of a contingent fee award, which will reduce the recovery of young children who were severely injured while in the care and custody of a State agency, are matters of public interest. *See* Pressler, *Current N.J. Court Rules*, comment 1 on *R.* 1:21–7 (2008) (the policy of this rule is regarded as a matter of compelling state interest). In addition, settlement is premised on the expenditure of public funds. We are satisfied that DYFS is not a mere

intermeddler, nor an interloper, or stranger to the dispute. *Crescent Pk. Tenants Ass'n. v. Realty Equities Corp.*, 58 *N.J.* 98, 107, 275 *A.*2d 433 (1971).

### III.

We next address the primary issue raised on appeal, that is, whether the trial court abused its discretion in determining that the law firm was not entitled to any fee on the recovery in excess of $2,000,000. The law firm argues that the court's determination that the fee received on the first $2,000,000 of the recovery was adequate and that any increases beyond that amount "must be reserved for truly exceptional situations" is not supported by a reading of the contingency fee rule, the *RPC* 1.5 factors, or the public policy considerations that underlie the contingency fee system. The law firm contends that the trial court "ignored the agreement between the clients (here, experienced attorneys serving as guardians ad litem for the children) and the law firm that the fee would be *contingent* on recovery, instead converting it into a fee that was *contingent on time spent.*" The law firm asserts that because it "traded away the guaranteed payment of an hourly fee (one that is contingent on time spent) when it agreed with the guardians ad litem that the fee would be contingent on recovery, the lower court's action in this regard was patently unfair."

DYFS counters that the law firm's arguments "undercut [ ] the court's role in supervising contingent fees and the goal of *RPC* 1.5 that the lawyer's fee must be reasonable under all the circumstances." DYFS contends that it was incumbent on the law firm to substantiate that the fee allowed on the first $2,000,000 was inadequate to compensate the law firm for the services rendered.

In denying the application for a reasonable fee, the trial court determined that it was the law firm's "burden to satisfy the Court of the appropriateness of awarding a fee"; that the lack of any documentation of time records was "fatal to [the law firm's] application"; and that increases in fees beyond those "provided in *R.* 1:21–7(c) [ (1) through (4) ] must be reserved for truly excep-

tional situations as where new law is established on appeal[,] or where a trial, appeal, or re-trial are required." We disagree.

Appellate review of a trial court's attorney fee determination is deferential. We will only disturb the trial court's determination on a showing of "clear abuse of discretion" based on the record presented on the fee application. *Rendine v. Pantzer*, 141 *N.J.* 292, 317, 661 *A.*2d 1202 (1995). However, we need not defer to a trial court's interpretation of the law. *Manalapan Realty, L.P. v. Twp. Comm. of Manalapan*, 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995). In this case, the applicable rule is ambiguous, and we conclude that the trial judge, perhaps understandably, misread it.

We begin our analysis with a review of the contingent fee rule, which provides in pertinent part:

(c) In any matter where a client's claim for damages is based upon the alleged tortious conduct of another, including product liability claims and claims among family members that are subject to Part V of these Rules but excluding statutorily based discrimination and employment claims, and the client is not a subrogee, an attorney shall not contract for, charge, or collect a contingent fee in excess of the following limits:

  (1) 33–1/3% on the first $500,000 recovered;

  (2) 30% on the next $500,000 recovered;

  (3) 25% on the next $500,000 recovered;

  (4) 20% on the next $500,000 recovered;

  (5) on all amounts recovered in excess of the above by application for reasonable fee in accordance with the provisions of paragraph (f) hereof; and

  (6) where the amount is recovered is for the benefit of a client who was a minor or mentally incapacitated when the contingent fee created arrangement was made, the foregoing limits shall apply, except that the fee on any amount recovered by settlement without trial shall not exceed 25%.

(d) ....

(e) Paragraph (c) of this rule is intended to fix maximum permissible fees and does not preclude an attorney from entering into a contingent fee arrangement providing for, or from charging or collecting a contingent fee below such limits. In all cases contingent fees charged or collected must conform to RPC 1.5(a).

(f) If at the conclusion of a matter, an attorney considers the fee permitted by paragraph (c) to be inadequate, an application on written notice to the client may be made to the Assignment Judge for the hearing and determining of a reasonable fee in light of all the circumstances....

[*R.* 1:21–7.]

*Rule* 1:21–7(c) governs the fee that an attorney may charge a client when the attorney represents the client in a personal injury action based on a contingent fee agreement. The rule sets forth a schedule of maximum fees that an attorney may collect on the first $2,000,000 of a recovery. *R.* 1:21–7(c)(1) to (4). The rule also permits an attorney to apply in two instances for fees in addition to those permitted by the schedule.

First, an attorney may seek an increased or enhanced fee on the first $2,000,000 of a recovery, contending that under the facts and circumstances of a given case, the fee permitted under the schedule is inadequate. *R.* 1:21–7(f). On that kind of application, the burden is on the attorney to show the fee permitted by the schedule is inadequate. *Anderson v. Conley,* 206 *N.J.Super.* 132, 147, 501 *A.*2d 1057 (Law 1985). Applications for a fee in excess of the amount permitted by the schedule are reserved for exceptional cases. *Id.* at 146, 501 *A.*2d 1057; *see* Pressler, *Current N.J. Court Rules,* comment 7 on *R.* 1:21–7 (2008) ("The claim of inadequacy must be substantial and thoroughly documented and cannot rest merely on the claim of a successful result in a generally difficult type of litigation without showing of the particular difficulty of the specific litigation in question."); *see also Bolle v. Cmty. Mem'l Hosp.,* 145 *N.J.Super.* 593, 596–97, 368 *A.*2d 935 (App.Div.1976), *certif. denied,* 74 *N.J.* 275, 377 *A.*2d 679 (1977).

"In order to be entitled to an increased fee over and above that provided by ... paragraph (c) the attorney must demonstrate that (1) the fee allowed under the rule is not reasonable compensation for the services actually rendered, and (2) the case presented problems which required exceptional skills beyond that normally encountered in such cases where the case was unusually time consuming." *Wurtzel v. Werres,* 201 *N.J.Super.* 544, 549, 493 *A.*2d 611 (App.Div.), *certif. denied,* 102 *N.J.* 353, 508 *A.*2d 223 (1985). Although the failure to submit time records in support of an increased fee application under *Rule* 1:21–7(f) is not fatal, the application "could be better evaluated if such records

were kept and produced." *Bolle, supra,* 145 *N.J.Super.* at 596, 368 *A.*2d 935.

■ The second kind of application is where an attorney seeks a "reasonable" fee on the amount of recovery in excess of $2,000,000 pursuant to *Rule* 1:21–7(c)(5). Unlike the first type of application where an attorney seeks an "increased or enhanced" fee, in the second type, a fee on that part of a recovery in excess of $2,000,000 is not prescribed by a fixed schedule. Rather, the amount of the fee is to be determined by the court. Although the rule directs an attorney to make an application for a reasonable fee pursuant to *Rule* 1:21–7(f), we are satisfied that the rule's intent is only to require that the application complies with the procedural requirements of notice and of a hearing as stated in subsection (f).[5]

■ While we acknowledge that *Rule* 1:21–7(c)(5) is somewhat ambiguous, we hold that on an application for a reasonable fee on the amount of recovery in excess of $2,000,000, no burden of proof is placed on the moving attorney to show the inadequacy of the fee recovered on the first $2,000,000. *Compare Paterson Redevelopment Agency v. Bienstock,* 123 *N.J.Super.* 457, 459–60, 303 *A.*2d 598 (App.Div.1973) (holding that where the basic issue in a condemnation proceeding is the amount of just compensation, the burden of proof concept has no place in the inquiry). *Rule* 1:21–7(c)(5) contemplates that a reasonable fee be awarded on the amount of the recovery exceeding $2,000,000, and leaves the amount to the discretion of the Assignment Judge, or his or her designee. "[I]n considering a fee application under this subsection with respect to an award in excess of $2,000,000, the judge should rely on the factors listed in *RPC* 1.5 in setting a reasonable fee." Pressler, *Current N.J. Court Rules,* comment 7 on *R.* 1:21–7

---

[5] The Civil Practice Committee may wish to consider revising *Rule* 1:21–7(c)(5) to clarify that the reference to Subsection (f) refers to the procedure of that subsection, and not the substantive standard of inadequacy of the fee.

(2008); *see also Ehrlich v. Kids of N. Jersey, Inc.*, 338 *N.J.Super.* 442, 446, 769 *A.*2d 1081 (App.Div.2001).

We conclude that our holding is consistent with the precepts underpinning a contingent fee agreement. A "contingent fee agreement" is defined in *Rule* 1:21–7(a) as "an agreement for legal services of an attorney . . . under which compensation, contingent in whole or in part upon the successful accomplishment or disposition of the subject matter of the agreement, is to be an amount which is either fixed or to be determined under a formula." By definition, the attorney prosecuting a personal injury tort action runs the risk that he or she will not receive anything if there is no recovery, no matter how diligent the legal service provided. Because of this unique relationship between the attorney and client, a contingent fee agreement provides a method of compensation "which bears no direct relationship either to the effort expended by the attorney or the actual value of the services." *Amer. Trial Lawyers Assoc. v. N.J. Sup.Ct.*, 126 *N.J.Super.* 577, 592, 316 *A.*2d 19 (App.Div.), *aff'd*, 66 *N.J.* 258, 330 *A.*2d 350 (1974). To prevent such disparity from resulting in overreaching, the Court adopted *Rule* 1:21–7(c) to "establish [ ] the outer limits of permissible contingent fees in tort litigation." *Id.* at 587, 316 *A.*2d 19.

Contingent fee agreements permit injured parties, who otherwise would not be able to afford the services of an attorney, to assert their rights. "[T]he object of the [contingent fee agreement] is to furnish to indigent suitors the means of vindicating their rights, which otherwise, because of their poverty, they would not be able to assert; and if they are unsuccessful, the officers of the court whose aid has been required under it must of necessity go without compensation." *Hassell v. Van Houten*, 39 *N.J. Eq.* 105, 110 (Ch. 1884); *see also Soper v. Bilder*, 87 *N.J. Eq.* 564, 569, 100 *A.* 858 (Ch.1917), where Vice Chancellor Lane in speaking to the reasonableness of a contingent fee, stated:

[I]n computing what is reasonable compensation many elements must be taken into account. There is no yardstick by which the value of legal services can be

measured; no rates per diem or percentages can be employed with justice to both parties. The legal ability of the attorney, the amount of work which he does, the skill with which he does it, and, of much importance, the amount involved, and the success of his efforts. There may also be considered the contingency that in case he is unsuccessful he will receive nothing, and the fact, if it be a fact, that the fund was created through the efforts of the attorney.

The inherent risk, which an attorney assumes in prosecuting a tort action under a contingent fee agreement, is a factor that must be weighed in determining a fee on a recovery in excess of $2,000,000. *RPC* 1.5(a)(8).

*RCP* 1.5(a) contains eight factors to be considered by the trial court in determining the reasonableness of a fee.

(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed on the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent.

[*RPC* 1.5(a).]

When considering an application for a reasonable fee pursuant to *Rule* 1:21–7(c)(5), the trial court must exercise its discretion "in light of all the circumstances." *R.* 1:21–7(f). In doing so, the court should consider all the factors of *RPC* 1.5(a).

Here, the trial judge considered factors (1), (4), (6), (7), and (8) and stated her reasons why she found those factors did not support the award of a fee on the amount recovered in excess of $2,000,000. However, in reaching her decision, it appears that the judge placed almost exclusive emphasis on the first factor, that is, the time and labor expended by the law firm in prosecuting the action. "[T]here is a complete absence of any documentation of

hours expended. This lack, under the circumstances, presented here, is fatal to [the law firm's] application for additional fees." As stated, *supra*, the failure to supply time records in support of an application for a reasonable fee is not fatal, *Bolle, supra,* 145 *N.J.Super.* at 596, 368 *A.*2d 935, albeit, "the time devoted to the case is an important factor and should generally be included as part of any application." *Ehrlich, supra,* 338 *N.J.Super.* at 447, 769 *A.*2d 1081.

We conclude that the trial judge mistakenly applied the wrong standard in determining a reasonable fee on the amount of recovery in excess of $2,000,000 by requiring the law firm to demonstrate that the fee received on the first $2,000,000 was inadequate for the services rendered in prosecuting the action. We are also satisfied that the judge incorrectly determined that the law firm's failure to submit time records was fatal to its application for a reasonable attorney fee. Accordingly, we reverse and remand this matter to the trial court to reconsider the law firm's application for a reasonable attorney fee on the amount of the recovery in excess of $2,000,000 pursuant to *Rule* 1:21–7(c)(5). On remand, the trial judge is to consider *RPC* 1.5(a) factors in light of all the circumstances, which may include the amount the law firm received on the first $2,000,000 of the recovery.

Reversed and remanded to the Law Division for further proceedings consistent with this opinion.