SUTER, J.A.D.
*420 We consolidate these two appeals for the purpose of this opinion. In Goldman v. Critter Control of New Jersey, A-1392-16 (Critter Control ), plaintiff Stuart Goldman appeals from the September 6, 2016 order that dismissed with prejudice the complaint he filed against defendants Critter Control of New Jersey, Kewin, Inc. d/b/a Critter Control of New Jersey, Robert McDonough and Evan Windholz (Critter Control defendants). In this complaint, plaintiff sought civil penalties under the Prevention of Cruelty to Animals Act (PCAA), N.J.S.A. 4:22-11.1 to -60. Plaintiff also *421 appeals from the November 4, 2016 order *948 that denied reconsideration and his motion to amend the complaint.
In Goldman v. Carlstrom, Hill, and Simplicity Farms, A-3906-16 (Simplicity Farms ), plaintiff appeals from the April 19, 2017 order that dismissed his complaint with prejudice against defendants Madison Carlstrom, Matthew Hill and Simplicity Farms (Simplicity Farm defendants) and denied his motion to file a second amended complaint. We consolidate these appeals because plaintiff sought statutory penalties under N.J.S.A. 4:22-26 in both complaints based on allegations of animal cruelty against defendants and both complaints were dismissed for lack of standing. The factual allegations are based on plaintiff's complaints. We affirm the orders for reasons that follow.
I
Plaintiff is the former chief humane law enforcement officer for the Monmouth County Society for the Prevention of Cruelty to Animals (Monmouth SPCA). He also is a trustee for two non-profit animal welfare organizations.
In Critter Control, plaintiff alleged that in May 2015, he learned from a resident of Matawan that Critter Control defendants trapped a female adult raccoon and removed it from the roof of a house. Although Critter Control defendants claimed the raccoon was not lactating, a few days later baby raccoons were discovered in the gutters of the same house. Plaintiff alleged the baby raccoons had gone without sustenance for a week.
Plaintiff filed a complaint "by way of ... qui tam" against Critter Control defendants, seeking "damages and civil penalties" for violations of N.J.S.A. 4:22-26 for "animal cruelty, animal abuse, negligence, recklessness, [and] negligent infliction of emotional distress." He alleged that Critter Control defendants violated N.J.S.A. 4:22-26(a)(4) by failing, "as the owner or a person otherwise charged with the care of a living animal or creature, to provide the living animal or creature with necessary care, or otherwise cause or procure such an act to be done."
*422 A person who violates that statute "[s]hall forfeit and pay a sum" according to a schedule set forth in the statute,
to be sued for and recovered, with costs, in a civil action by any person in the name of the New Jersey Society for the Prevention of Cruelty to Animals or a county society for the prevention of cruelty to animals, as appropriate, or, in the name of the municipality if brought by a certified animal control officer or animal cruelty investigator.
[ N.J.S.A. 4:22-26 (emphasis added).]
Penalties for a violation of N.J.S.A. 4:22-26(a)(4) range from $500 to $2000. Plaintiff's complaint demanded compensatory and consequential damages, statutory civil penalties, punitive damages and attorney's fees.
Critter Control defendants filed a motion to dismiss the complaint, asserting that plaintiff lacked standing. On September 6, 2016, the trial court granted their motion and dismissed the complaint with prejudice. The statute was "plain and unambiguous," according to the trial court's rider to its order, providing that "only select organizations, not individuals, may pursue a civil remedy under the statute." Because plaintiff brought the complaint "in his individual name, not in the name of the [New Jersey] SPCA, a county society for the prevention of animals, or Monmouth County," plaintiff lacked standing to proceed with the lawsuit.
Plaintiff's reconsideration motion, captioned as "Stuart Goldman in the name of the Monmouth [SPCA]," also asked to amend the complaint to show that he was *949 filing it in the name of the Monmouth SPCA. He certified that the Monmouth SPCA had no objection to his lawsuit. The motions were denied.
In Simplicity Farms, plaintiff's April 2016 complaint alleged that Simplicity Farm defendants violated N.J.S.A. 4:22-26(a)(1)[2] and N.J.S.A. 4:22-26(a)(4) by mistreating horses. The complaint alleged *423 improper medical treatment of the horses, beatings, lack of food, and lack of medical attention, resulting in the death of a colt. Plaintiff disagreed with the Monmouth SPCA's decision not to pursue criminal or civil charges against Simplicity Farm defendants. Plaintiff's complaint purported to be a qui tam action that sought compensatory damages, statutory civil penalties, punitive damages and attorney's fees. On January 9, 2017, defendants' unopposed motion to dismiss was granted.
Plaintiff asked for reconsideration and to amend the complaint's caption as "Stuart Goldman in the name of the Monmouth County [SPCA]." Although the trial judge vacated the January 9, 2017 dismissal in order to consider plaintiff's opposition, she nonetheless granted defendants' motion to dismiss on April 19, 2017, for lack of standing and denied as futile plaintiff's motion to amend the complaint.
The trial court concluded that the Legislature intended to have "uniform rules and regulations" for the enforcement of animal cruelty laws. If the complaint were allowed to proceed, the effect would "eviscerat[e] all of the sections of the statute ... regarding the appointment, training, [and] supervision of agents who have been determined [to] have the ability to engage in that function." The judge rejected plaintiff's contention that a private individual had authority under N.J.S.A. 4:22-26 to investigate or prosecute allegations of animal cruelty.
On appeal in Critter Control, plaintiff alleges he had standing to sue in the name of the Monmouth SPCA as a qui tam action and that the court erred by not granting his motion for reconsideration to allow him to amend the complaint with the proper caption. Also, he claims the court erred by not granting relief under Rule 4:50-1.
In Simplicity Farms, plaintiff contends his complaint should not have been dismissed because the statute authorizes "any person in the name of" the SPCA to file a civil action. His proposed second amended complaint was not "futile" because it was a qui tam action. We find no merit in these arguments.
*424 II
"Standing is a threshold requirement for justiciability." Watkins v. Resorts Int'l Hotel & Casino, Inc., 124 N.J. 398, 421, 591 A.2d 592 (1991). "[S]tanding to assert the rights of third parties is appropriate if the litigant can show sufficient personal stake and adverseness so that the [c]ourt is not asked to render an advisory opinion." Estate of F.W. v. State of N.J., Div. of Youth and Family Servs., 398 N.J. Super. 344, 353, 942 A.2d 48 (App. Div. 2008) (alteration in original). A litigant generally cannot assert the rights of a third party. Ibid. Our review of orders that dismiss claims for lack of standing is de novo. Courier-Post Newspaper v. County of Camden, 413 N.J. Super 372, 381, 995 A.2d 306 (App. Div. 2010).
*950 Plaintiff does not have standing to sue Critter Control defendants or Simplicity Farm defendants in his individual capacity. He did not claim to own, control or have any financial interest in any of the animals involved in these cases. Plaintiff filed the complaints in his name and not in the name of the New Jersey SPCA or Monmouth SPCA. The complaint in Critter Control was dismissed because plaintiff did not have standing as an individual to sue those defendants. We find no error in that order because the complaint did not conform to the statute.
Simplicity Farms was dismissed based on the judge's finding that plaintiff did not have standing because N.J.S.A. 4:22-26 did not authorize him to file a qui tam action. We agree. We decline to construe N.J.S.A. 4:22-26 as authorizing private citizens, who otherwise would not have standing, to sue for civil penalties under the PCAA in qui tam actions against other parties, who they allege may have committed acts of animal cruelty.
A "qui tam[3] action" is defined as:
*425 an action brought by an informer, under a statute which establishes a penalty for the commission or omission of a certain act, and provides that the same shall be recoverable in a civil action, part of the penalty to go to any person who will bring such action and the remainder to the state or some other institution.
[Black's Law Dictionary 1126 (5th ed. 1979).]
It is a "process whereby an individual sues or prosecutes in the name of the government and shares in the proceeds of any successful litigation of settlement." Charles Doyle, Qui Tam: The False Claims Act and Related Federal Statutes 1 (Cong. Research Serv., Report R40786, 2009), https://fas.org/sgp/crs/misc/R40785.pdf.
"In matters of statutory interpretation, our review is de novo." Verry v. Franklin Fire Dist. No. 1, 230 N.J. 285, 294, 166 A.3d 1140 (2017) (citing Saccone v. Bd. of Trs. of Police & Firemen's Ret. Sys., 219 N.J. 369, 380, 98 A.3d 1158 (2014) ). "The Legislature's intent is the paramount goal when interpreting a statute and, generally, the best indicator of that intent is the statutory language." DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005). "We ascribe to the statutory words their ordinary meaning and significance and read them in context with related provisions so as to give sense to the legislation as a whole." Ibid. (citations omitted). If the statute is ambiguous, "we may turn to extrinsic evidence, 'including legislative history, committee reports, and contemporaneous construction.' " Id. at 492-93, 874 A.2d 1039 (quoting Cherry Hill Manor Assocs. v. Faugno, 182 N.J. 64, 75, 861 A.2d 123 (2004) ).
Plaintiff contends that the legislature intended N.J.S.A. 4:22-26 to authorize qui tam law suits because it provides that "any person in the name of the New Jersey [SPCA]" or county SPCA can sue for civil penalties. We analyze the PCAA "in context with related provisions." Id. at 492, 874 A.2d 1039 (citing Chasin v. Montclair State Univ., 159 N.J. 418, 426-27, 732 A.2d 457 (1999) ).
*426 The PCAA recently was amended by L. 2017, c. 331, effective August 1, 2018, to transfer the "power of humane law enforcement from the New Jersey [SPCA] and county societies for the prevention of cruelty to animals (county societies) to a *951 county prosecutor animal cruelty task force in each county, and a municipal humane law enforcement officer appointed in each municipality." S. Econ. Growth Comm. Statement to S. 3558 (Nov. 30, 2017). The new legislation established a "county prosecutor animal cruelty task force" that will be "responsible for animal welfare within the jurisdiction of the county, and enforce and abide by the animal cruelty laws of the state." Ibid. Because these amendments are not yet in effect, we review Critter Control and Simplicity Farms under the PCAA prior to its 2017 amendment.
Under the PCAA, the New Jersey SPCA granted charters to form county societies for the prevention of cruelty to animals and "establish bylaws and uniform standards and guidelines." N.J.S.A. 4:22-11.3. It appointed agents "for enforcing all laws and ordinances enacted for the protection of animals and for the investigation of alleged acts of cruelty to animals within the State." N.J.S.A. 4:22-11.4(e). All "humane law enforcement officers" were trained "in accordance with mandatory uniform standards, guidelines, and procedures for the operation of all county societies." N.J.S.A. 4:22-11.8(b). Both the New Jersey SPCA and county societies could sue and be sued in court. N.J.S.A. 4:22-11.4(h) ; N.J.S.A. 4:22-11.7(h).
The PCAA provides for criminal and civil penalties. N.J.S.A. 4:22-17 sets forth acts that are unlawful and the range of permissible fines and/or terms of imprisonment. N.J.S.A. 4:22-26 sets forth acts that constitute animal cruelty and civil penalties for violations. N.J.S.A. 4:22-26 provides that the civil penalties can be "sued for and recovered ... by any person in the name of the New Jersey [SPCA]."[4]
*427 The penalties for violations of N.J.S.A. 4:22-26"shall be enforced and collected in a summary manner under the 'Penalty Enforcement Law of 1999,' [ N.J.S.A. 2A:58-10 ]." N.J.S.A. 4:22-32. The PCAA also provides that
all fines, penalties and moneys imposed and collected ... shall be paid by the court or by the clerk or court officer receiving the fines, penalties or money, within thirty days and without demand, to (1) the county society for the prevention of cruelty to animals of the county where the fines, penalties or moneys were imposed and collected, if the county society brought the action or it was brought on behalf of the county society to be used by the county society in aid of the benevolent objects for which it was incorporated, or (2) in all other cases, the New Jersey [SPCA], to be used by the State society in aid of the benevolent objects for which it was incorporated.
[ N.J.S.A. 4:22-55.]
Plaintiff rests his argument on the phrase "any person in the name of the New Jersey [SPCA]" in N.J.S.A. 4:22-26. He notes the "any person" language was maintained despite the legislation's recent amendments. This language by itself does not signal authority for qui tam litigation in light of the legislation's other provisions. We will therefore look to other extrinsic sources to aid our interpretation.
Early versions of the statute give some support to plaintiff's cause. In 1868, the legislation allowed "one-half of the fines and forfeitures collected through the instrumentality of the society, its members or agents" to accrue to the "benefit of said society" for its purposes. L. 1868, c. 335, § 5. In 1880, the legislation expressly used *952 the term "qui tam," providing that for proceedings under the act, "it shall not be necessary to endorse the summons or warrant as in qui tam actions with the time of the issuing of same, or the title of the act under which it is issued." L. 1880, c. 157, § 21.
That same 1880 law prohibited certain acts of cruelty to animals in Section 13 and imposed penalties "not to exceed one hundred dollars together with costs, ... to be sued for and recovered in an action of debt, with cost of suit by any person or persons, in the name of the New Jersey [SPCA]." Section 15 of the 1880 law continued to require all fines, penalties or moneys collected under the act to be shared. One-half was to be paid "to the informer, *428 complainant or prosecutor" and the other half was paid to the local SPCA if in existence or to the State SPCA, if not. L. 1880, c. 157, § 15.
In N.J. S.P.C.A. v. Russ, 83 N.J.L. 450, 451, 83 A. 961 (E. & A. 1912), the Court held that a proceeding under Section 13 of the 1880 law was a civil proceeding, not a criminal one. Citing to Section 15, the Court noted that an action for a penalty is a qui tam action where "a portion of [the penalty] when recovered goes to the informer." Ibid.
The issue before the Court in Russ was not whether the 1880 version of the PCAA authorized qui tam law suits; it was whether a proceeding under Section 13 of that Act was civil or criminal. Even if Russ provided some insight on the issue before us, the Court apparently did not take note of a 1908 amendment that changed the payment structure in Section 15. As of April 10, 1908, "[n]o part of any fine, penalty or money imposed or collected for any offense in violation of any act for the prevention of cruelty to animals shall be paid by any court to the complainant, informer or prosecutor, but all such fines, penalties or moneys shall be paid" to the county SPCA where the offense occurred. L. 1908, c. 148, § 2.[5] After 1908, no fines, penalties or moneys collected were shared with any entity other than the various SPCA organizations. See N.J.S.A. 4:22-55. Because the Court in Russ held that qui tam actions involved a sharing of moneys recovered, the 1908 amendment undercut Russ's construction of the statute as authorizing qui tam lawsuits.
The penalties for violations of N.J.S.A. 4:22-26 are to be "enforced and collected in a summary manner" under the Penalty Enforcement Law (PEL), N.J.S.A. 2A:58-10. That has been the case at least since 1953 when the PCAA was amended to reflect the PEL. See L. 1953, c. 5, § 69. The PEL authorizes "an *429 administrative agency of the State" that has been awarded a "fixed amount of money as a civil penalty," following the opportunity for a hearing under the Administrative Procedures Act (APA), N.J.S.A. 52:14B-1 to -15, to record the final order as a judgment. If a statute or ordinance authorized a civil penalty, the PEL authorizes a summary action in the Superior Court.
Judgments for civil penalties are to be paid to the State Treasurer unless the statute provides another disposition. "An action under the [PEL] ... is civil in nature." Game v. Scipio, 88 N.J. Super. 315, 319, 212 A.2d 184 (App. Div. 1965) (concerning the enforcement of penalties for violating the Fish and Game Code). There is no indication that the PEL was intended for private individuals to enforce statutory penalties for public entities.
*953 Thus, reference to the PEL indicates that the Legislature did not contemplate enforcement of its provisions by individuals. It makes little sense for plaintiff to be able to file a civil action and then not be able to enforce a judgment or keep any portion of the penalties.
The PCAA authorized enforcement of the animal cruelty laws by the New Jersey or county SPCAs; authorized the SPCA to promulgate uniform bylaws and guidelines; required humane officers to be trained in these "mandatory uniform standards, guidelines and procedures"; authorized the imposition of civil penalties; dedicated all of the penalties to the SPCAs; allowed collection of the penalties pursuant a law that allows administrative agencies to collect penalties; and long ago, removed language referencing qui tam actions or informers. Given the many amendments of this legislation, we decline to interpret the PCAA as authorizing qui tam lawsuits.
Qui tam suits must be expressly authorized by legislation. See In re N.J. Firemen's Ass'n Obligation to Provide Relief Applications Under Open Pub. Records Act, 443 N.J. Super. 238, 258, 128 A.3d 716 (App. Div. 2015) (quoting R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co., 168 N.J. 255, 271, 773 A.2d 1132 (2001) ) (stating our courts "have been reluctant to infer a statutory private right of action where the Legislature has not *430 expressly provided for such action"). The New Jersey False Claims Act, N.J.S.A. 2A:32C-1 to -18, permits such law suits, N.J.S.A. 2A:32C-5(b), where the complainant has "direct and independent knowledge of the information on which the allegations are based." Brennan v. Lonegan, 454 N.J. Super. 613, 619, 186 A.3d 925, 2018 WL 1974993 at *2 (App. Div. 2018) (citing N.J.S.A. 2A:32C-9(c) ). In contrast to that law, however, the PCAA does not give the government (or SPCA) the opportunity to review the complaint and then decide whether to intervene, does not bar other persons from intervening, does not provide for a stay of an action if it interferes with a government investigation or prosecution, does not allocate penalty proceeds, nor provide a statute of limitations. Cf. In re Enf't of N.J. False Claims Act Subpoenas, 444 N.J. Super. 566, 568, 134 A.3d 1012 (App. Div. 2016), aff'd o.b., 229 N.J. 285, 290, 162 A.3d 262 (2017) ; N.J.S.A. 2A:32C-5 ; N.J.S.A. 2A:32C-7. The PCAA has no provision to address frivolous lawsuits filed by individuals in the name of the SPCA. Just as important, qui tam actions filed by individuals under the PCAA would conflict with the uniform enforcement of animal welfare laws evident throughout the PCAA.
The cases cited by plaintiff provide little assistance. Russ, 83 N.J.L. at 450, 83 A. 961, was brought by the New Jersey SPCA, not by an individual. Its characterization of the PCAA as a qui tam statute was dicta and overlooked the 1908 legislation that changed how fines, penalties and moneys were paid.
In State v. Bernstein, 189 N.J. Super. 212, 459 A.2d 1185 (App. Div. 1983), the defendant was criminally prosecuted in conjunction with a civil claim for animal abuse under N.J.S.A. 4:22-26. The SPCA prosecuted the appeal of the civil claim even though the complaint was filed in the name of the State. The SPCA was added as a party. We did not discuss whether the action was filed as a qui tam lawsuit.
In Lanni v. City of Bayonne, 7 N.J. Super. 169, 172, 72 A.2d 397 (App. Div. 1950), the court rejected the qui tam recovery of fines in prosecuting zoning ordinance violations, but cited *431 N.J.S.A. 4:22-26 as an example where such recovery was available. Because the issue there did not involve the PCAA, the court's statement was not binding. See *954 Bandler v. Melillo, 443 N.J. Super. 203, 211, 128 A.3d 695 (App. Div. 2015).
Sawran v. Lennon, 19 N.J. 606, 612, 118 A.2d 10 (1955), provided that qui tam actions are civil and not criminal in nature, but the case did not involve the statute here or animal cruelty laws.
We find unpersuasive plaintiff's citation to N.J.S.A. 4:22-26.1. That statute concerns the confiscation and forfeiture of animals by an officer or agent of the SPCA where there has been a violation of specific portions of the PCAA. It does not refer to N.J.S.A. 4:22-26.
Plaintiff contends that the PCAA allows him to file lawsuits to enforce animal protection laws even where the SPCA investigated the allegations and chose not to do so. We find nothing in the legislative history and the PCAA's many amendments that would support this result. Indeed, the new amendments to the PCAA shift enforcement responsibilities to the county prosecutor task forces and militate against plaintiff's contention that the law allows for private enforcement actions. In sum, we decline to construe the PCAA as authorizing qui tam lawsuits.
Finally, we discern no misapplication of discretion by the trial judges in denying plaintiff's motions to amend the complaints because the amendments would have been futile in light of his lack of standing. See Bustamante v. Borough of Paramus, 413 N.J. Super. 276, 298, 994 A.2d 573 (App. Div. 2010).
Affirmed.

This section provides penalties for a person who shall "[o]verdrive, overload, drive when overloaded, overwork, abuse, or needlessly kill a living animal or creature, or cause or procure, by any direct or indirect means, including but not limited to through the use of another living animal or creature, any such acts to be done."

"Qui tam is short for qui tam pro domino rege quam pro se ipso in hac parte sequitur, meaning, who pursues this action on our Lord the King's behalf as well as his own." State ex rel. Hayling v. Corr. Med. Servs., Inc., 422 N.J. Super. 363, 368 n. 2, 28 A.3d 1246 (App. Div. 2011).

This section was amended by L. 2017, c. 331, § 13: to provide that the civil suit for penalties is "by any person in the name of the municipality or county wherein the defendant resides or where the offense was committed."

In 1929, Section 15 was amended again and Section 2 of the 1908 law was repealed. The 1929 legislation continued to provide that none of the moneys were to be paid to a claimant or informer.