NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0749-15T2
            A-0756-15T2

IN THE MATTER OF THE
ENFORCEMENT OF NEW JERSEY
FALSE CLAIMS ACT SUBPOENAS

> APPROVED FOR PUBLICATION
>
> **March 18, 2016**
>
> **APPELLATE DIVISION**

_____

Argued February 23, 2016 – Decided March 18, 2016

Before Judges Fisher, Espinosa and Rothstadt.

On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. C-208-15.

Elizabeth J. Hampton argued the cause for appellant John Henderson (Fox Rothschild LLP, attorneys; Alain Leibman and Ms. Hampton, of counsel and on the brief).

Kevin H. Marino argued the cause for appellant Arthur Nardin (Marino, Tortorella & Boyle, P.C., attorneys; Mr. Marino and John A. Boyle, on the brief).

Janine Matton, Deputy Attorney General, argued the cause for respondent State of New Jersey (John J. Hoffman, Acting Attorney General, attorney; Andrea M. Silkowitz and Brian F. McDonough, Assistant Attorneys General, of counsel; Ms. Matton, Joan E. Karn and Kent D. Anderson, Deputy Attorneys General, on the brief).

Lawrence S. Lustberg argued the cause for intervenors Medco Health Solutions, Inc. and Express Scripts Holding Co. (Gibbons P.C.,

Jennifer G. Wicht (Williams & Connolly) of the Washington, D.C. bar, admitted pro hac vice, and Holly M. Conley (Williams & Connolly) of the Washington, D.C. bar, admitted pro hac vice, attorneys; Mr. Lustberg, Amanda B. Protess, Ms. Wicht, and Ms. Conley, on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

In this appeal, we consider the propriety of an order that directed appellants John Henderson and Arthur Nardin and intervenors Medco Health Solutions, Inc., and Express Scripts Holding Co. to comply with administrative subpoenas issued by the Acting Attorney General (the Attorney General) pursuant to the New Jersey False Claims Act (NJFCA), N.J.S.A. 2A:32C-1 to -15, -17 to -18. Because the NJFCA precludes the Attorney General's use of administrative subpoenas into the subject matter of a qui tam action once, as here, he declines to intervene within the prescribed time period, we reverse.

I

We start at the beginning. In August 2011, Paul Denis, a former Medco employee (hereafter "the relator"), commenced a qui tam action — under seal — in the United States District Court for the District of Delaware. United States ex rel. Denis v. Medco Health Sols., Inc., No. 1:11-cv-00684-RGA (D. Del.). Two years later, the relator amended his complaint to assert claims on behalf of the State of New Jersey; he alleged that Medco, the

pharmacy benefits manager for the State's employee health benefits programs, perpetrated a massive fraud on the State and other governmental entities by retaining rebates it was required to pass through to its clients, in violation of the federal False Claims Act, 31 U.S.C.A. § 3729 to § 3733, and the NJFCA.[1]

Pursuant to N.J.S.A. 2A:32C-5(d), the Attorney General was required to determine, within sixty days of service of the amended complaint, whether to intervene and take control of the State's claims. This sixty-day period may be extended by motion, N.J.S.A. 2A:32C-5(f), and the record reveals the Attorney General's office repeatedly took advantage of this opportunity; extensions granted by the district judge in the qui tam action totaled approximately 600 days. When yet another extension was sought on March 6, 2015, the district judge granted it but also declared that the "final intervention deadline" would be June 2, 2015.

In a certification filed in the suit at hand, the Attorney General asserted that since April 2014 he had been "diligently investigat[ing] relator's claims . . . to determine whether to intervene," although the certification suggests only there were attempts to schedule meetings and the production of documents that, for the most part, never occurred by the time the district

---

[1] The amended complaint includes claims asserted on behalf of other states as well.

judge's deadline came and went. Even if we were to agree that appellants engaged in delaying tactics — as to which we are not convinced but need not decide — it neither explains nor excuses the Attorney General's failure to proceed more expeditiously for such an extraordinarily lengthy period of time. There is no dispute Medco was timely served with a subpoena and, to the extent it could be argued it did not comply — a matter in dispute — the Attorney General did not seek enforcement within the extended time period permitted by the district judge. Moreover, there is no dispute Henderson and Nardin were not served with subpoenas until July 22, 2015 — seven weeks after the deadline's expiration and the unsealing of the qui tam complaint.

When the district judge's extended deadline expired, appellants refused to comply with the Attorney General's tardy subpoenas. In September 2015, Medco filed — and Henderson and Nardin joined in — a motion in federal court for a protective order. The State opposed the motion, which the district judge denied because he believed the parties' dispute about the enforceability of the administrative subpoenas was a matter to be resolved by our courts.

While opposing Medco's motion, the Attorney General also sought — by way of the civil action at hand — enforcement of his subpoenas, citing N.J.S.A. 2A:32C-14(a) and Rule 1:9-6(b). The

application was vigorously opposed. For reasons expressed in an oral decision, the chancery judge entered an order, which enforced the subpoenas and directed Henderson's and Nardin's appearances on October 30, 2015, and November 2, 2015, respectively.[2]

On October 30, 2015, we granted an emergent stay of the chancery judge's enforcement order and accelerated these appeals.

## II

The purely legal question posed in these consolidated appeals concerns the extent to which the NJFCA permits the Attorney General to continue to utilize the NJFCA's administrative subpoena power once his right to intervene in the qui tam action expired. We conclude, for the following reasons, that with the passing of the intervention deadline and the unsealing of the qui tam complaint, the NJFCA precluded the issuance and enforcement of subpoenas for the purpose of investigating the false claim or claims alleged in the qui tam action. The parties' dispute about the scope of the subpoena power created by the NJFCA turns on the meaning and relationship of a number of its provisions.

---

[2] We have the added benefit of the chancery judge's submission on October 23, 2015, pursuant to Rule 2:5-1(b), of a written amplification of the reasons he previously expressed in granting relief.

Initially, we observe that the NJFCA imposes on the Attorney General an obligation to investigate NJFCA violations and gives that office the authority to bring a civil action in state or federal court against violators. See N.J.S.A. 2A:32C-5(a). The NJFCA, however, also permits "[a] person [to] bring a civil action for a violation of this act for the person and for the State," N.J.S.A. 2A:32C-5(b), i.e., a qui tam action.[3] Such a complaint is filed under seal, N.J.S.A. 2A:32C-5(c), and its service on the Attorney General triggers his right "to intervene and proceed with the action on behalf of the State within 60 days," N.J.S.A. 2A:32C-5(d). The NJFCA also declares that the Attorney General may, "for good cause shown," seek from the qui tam court an extension of "the time during which the complaint remains under seal." N.J.S.A. 2A:32C-5(f).

"Before the expiration" of that 60-day period or any permitted extension, the Attorney General "shall" either:

> (1) file a pleading with the [qui tam] court that he intends to proceed with the action, in which case the action is conducted by the Attorney General and the seal shall be lifted; or
>
> (2) file a pleading with the [qui tam] court that he declines to proceed with the action, in which case the seal shall be lifted and

---

[3] "Qui tam" is a shortened title for the Latin expression, "qui tam pro domino rege quam pro si ipso in hac parte sequitur," meaning: "who sues on behalf of the King as well as for himself." Black's Law Dictionary 1251 (6th ed. 1990).

> the person bringing the action shall have the right to conduct the action.

> [N.J.S.A. 2A:32C-5(g).]

The NJFCA provides the Attorney General with no further options.

Although the Attorney General expressly chose neither of these two options, he has acknowledged that we may assume he chose the second option, and that we should consider the issues presented as if he filed a pleading in federal court declining to proceed with the qui tam action on behalf of the State.

### III

The Attorney General argues we should affirm the enforcement order, claiming his right to investigate remains unfettered despite the passing of the federal court's intervention deadline and the unsealing of the complaint. The Attorney General contends his right to investigate is limited only by the duration of the last vestige of his future potential involvement — the opportunity to seek intervention upon good cause shown. See N.J.S.A. 2A:32C-6(f) (recognizing when the Attorney General opts out and the relator "proceeds with the action" the Attorney General may later be "permit[ted] . . . to intervene and take over the action on behalf of the State . . . upon a showing of good cause"). The Attorney General also relies on N.J.S.A. 2A:32C-14(a), as if its terms were untethered to his choice not to intervene as of right; this provision states:

> If the Attorney General has reason to believe that a person has engaged in, or is engaging in, an act or practice which violates this act, or any other relevant statute or regulation, the Attorney General or the Attorney General's designee may administer oaths and affirmations, and request or compel the attendance of witnesses or the production of documents. The Attorney General may issue, or designate another to issue, subpoenas to compel the attendance of witnesses and the production of books, records, accounts, papers and documents.

The Attorney General asserts that this "extensive authority granted to [him] over the State's false claims matters" imbues him with "a broad subpoena power . . . that does not cease upon the unsealing of a qui tam complaint or a decision to decline intervention, and is not limited solely to determining whether to intervene as of right in a qui tam." And the Attorney General lastly urges that we consider the NJFCA's remedial purposes and the legislative mandate that the NJFCA be applied liberally, citing N.J.S.A. 2A:32C-17.

We reject the Attorney General's arguments. N.J.S.A. 2A:32C-14(a) broadly, but only generally, sets forth the administrative investigatory powers granted the Attorney General. It does not provide an additional or separate font of power once the Attorney General declines the right to intervene in a qui tam action within the prescribed timeframe. In other words, N.J.S.A. 2A:32C-14(a) only describes the authority of the

Attorney General to investigate a violation of the NJFCA and, therefore, may only be utilized when the Attorney General acts pursuant to N.J.S.A. 2A:32C-5. The triggering language of N.J.S.A. 2A:32C-14(a) — "[i]f the Attorney General has reason to believe that a person has engaged in, or is engaging in, an act or practice which violates this act" — merely describes the Attorney General's broad obligation to investigate violations of the NJFCA, see N.J.S.A. 2A:32C-5(a) (declaring that "[t]he Attorney General shall investigate a violation of this act"), and his specific right to investigate for the purpose of deciding whether to intervene in an existing qui tam action, N.J.S.A. 2A:32C-5(g). Because N.J.S.A. 2A:32C-14(a) is expressed in general terms, it cannot be construed so as to swallow up the NJFCA's careful and specific expression of the Attorney General's rights and obligations. See Wilson v. Unsatisfied Claim & Judgment Fund Bd., 109 N.J. 271, 278 (1988); Maressa v. N.J. Monthly, 89 N.J. 176, 195, cert. denied, 459 U.S. 907, 103 S. Ct. 211, 74 L. Ed. 2d 169 (1982).

That is, giving N.J.S.A. 2A:32C-14(a) the broad interpretation urged by the Attorney General would render meaningless most of what the Legislature carefully delineated in the NJFCA's earlier specific sections. The Legislature fixed a sixty-day deadline for the Attorney General to decide whether to take over the relator's action or opt out. N.J.S.A. 2A:32C-5(g).

The argument that the Attorney General could continue an investigation for so long as he cared, notwithstanding the passage of the deadline, implies that the Attorney General could seek leave to intervene in the qui tam action at any time up until the entry of final judgment. There is no support in this legislative framework for such an absurd result. Our goal in interpreting the NJFCA, or any other legislative enactment, is to construe and interpret its terms and provisions in a way that gives meaning to every part and produces "a harmonious whole." Bedford v. Riello, 195 N.J. 210, 224 (2008). We reject the contention that the investigative powers delineated in N.J.S.A. 2A:32C-14(a) provide the Attorney General with a continuing right to investigate matters that are the subject of an unsealed qui tam action[4]; to hold otherwise would render meaningless the time frames set forth in N.J.S.A. 2A:32C-5. The Attorney General's repeated requests for extensions in the qui tam action belie his contention that the right to serve and enforce

---

[4] We are cognizant of the fact that other states' false claims acts, as well as the federal False Claims Act, expressly declare that the passing of the intervention-as-of-right deadline terminates the subpoena power contained in those acts. See, e.g., 31 U.S.C.A. § 3733(a)(1); Ga. Code Ann. § 23-3-125(b)(1); 740 Ill. Comp. Stat. 175/6(a)(1); Mass. Gen. Laws, Ch. 12, § 5N(1). This does not mean that by failing to unambiguously express a limitation on the subpoena power the NJFCA imposes no limit at all. The absence of such clarity merely renders the NJFCA ambiguous in this regard, leaving us to ascertain the legislative intent through traditional canons of statutory construction.

administrative subpoenas survives undisturbed once the opportunity to intervene as of right passes.

N.J.S.A. 2A:32C-6(f), which is fully implicated here, limits the Attorney General's rights once he has decided "not to proceed" with the qui tam action and once the seal has been lifted. First, this provision recognizes that, once the Attorney General selects a course, "the person who initiated the action [the relator] shall have the right to conduct the action." Ibid. Once the relator is placed in control of the litigation, the NJFCA clearly presupposes that the Attorney General must stand down. This logical consequence of the Attorney General's declination of the right to intervene is emphasized in the provision's next sentence, which declares that "[t]he decision of the Attorney General on whether to proceed with an action shall be deemed final and shall not be subject to review by any court or agency." Ibid. When a choice is made, there is no turning back.

N.J.S.A. 2A:32C-6(f)'s next sentence relegates the Attorney General to mere bystander: "If the Attorney General so requests, the Attorney General shall be served at the expense of the Attorney General with copies of all pleadings and motions filed in the action and copies of all deposition transcripts." And the sentence that immediately follows describes the only remaining avenue for the Attorney General's subsequent participation in

the qui tam action: "When a person [i.e., the relator] proceeds with the action, the [qui tam] court, <u>without limiting the rights of the person</u> initiating the action, <u>may</u> permit the Attorney General to intervene and take over the action on behalf of the State at a later date <u>upon a showing of good cause</u>." <u>Ibid.</u> (emphasis added). The Attorney General naturally favors a broad reading of this last sentence, urging that the existence of this right to later seek intervention upon a showing of good cause for not having previously intervened justifies his continuing right to serve and enforce administrative subpoenas. He is mistaken.

All four sentences of <u>N.J.S.A.</u> 2A:32C-6(f) clearly favor the relator's right to control the action, as they concomitantly limit the Attorney General's further interference: (1) the relator has "the right to conduct the action"; (2) the Attorney General's decision to opt out is final and unreviewable; (3) the Attorney General is entitled to copies of pleadings, motions and deposition transcripts but only at his expense; and (4) the Attorney General remains on the outside looking in unless he can later convince the qui tam court that he has "good cause" for intervening. The fourth sentence, upon which the Attorney General's position turns, must be construed in light of its neighboring three sentences, all of which are flooded with a legislative intent that the relator be uninhibited in

controlling his qui tam action. The Attorney General's opportunity to intervene at a later date is similarly limited, requiring a demonstration of good cause that should be considered in light of the entire tenor of N.J.S.A. 2A:32C-6(f).

This understanding of N.J.S.A. 2A:32C-6(f) compels our conclusion that the Legislature meant to bar the Attorney General's separate NJFCA investigations into the same subject matter.

In the same spirit, we must also be mindful that the control of the qui tam discovery proceedings rests with the federal court. Matters of comity counsel against authorizing a separate collateral investigation by the Attorney General that might interfere with the federal judge's management of the qui tam action. See Sensient Colors, Inc. v. Allstate Ins. Co., 193 N.J. 373, 387 (2008); Continental Ins. Co. v. Honeywell Intern., Inc., 406 N.J. Super. 156, 173-74 (App. Div. 2009).

The Attorney General lastly contends that special care should be paid to N.J.S.A. 2A:32C-17, which mandates a "liberal[] constru[ction]" of the NJFCA "to effectuate its remedial and deterrent purposes." The Attorney General's reliance on N.J.S.A. 2A:32C-17 is misplaced, because the liberality the Attorney General would be entitled to in generally investigating and prosecuting NJFCA violations, or in determining whether to intervene as of right, quickly shifts in

favor of the relator once the Attorney General opts out. Consequently, the liberal construction of N.J.S.A. 2A:32C-6(f), which the Attorney General urges, warrants a cessation of his administrative subpoena powers, not their expansion.

IV

We recognize that the Attorney General retains the opportunity to seek intervention upon good cause shown in the qui tam action. But the NJFCA does not give the Attorney General the right to investigate the allegations of the qui tam action by way of administrative subpoena or through the conducting of ex parte interviews of witnesses as otherwise would have been permitted before he declined to intervene as of right. This holding does not preclude any actions that may be taken in aid or pursuit of a criminal prosecution[5] nor does it impinge on the Attorney General's investigation of other violations of the NJFCA or as may otherwise be permitted by law.

Reversed.

---

[5] Although N.J.S.A. 2A:32C-6(g) recognizes the Attorney General's right to seek a stay of qui tam discovery proceedings if he can demonstrate those proceedings would interfere with a pending civil or criminal investigation, we do not view this provision as meaning the administrative subpoena powers remain open to him once the qui tam complaint is unsealed. The provision only recognizes the possibility that the exercise of the Attorney General's other broad investigatory powers may at times come in conflict with qui tam proceedings.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0749-15T2