SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**In the Matter of the Enforcement of New Jersey False Claims Act Subpoenas (A-5-16) (077506)**

**Argued March 13, 2017 -- Decided June 7, 2017**

**(NOTE: The Court did not write a plenary opinion in this case. Instead, the Court affirms the judgment of the Appellate Division substantially for the reasons expressed in Judge Fisher's written opinion, which is published as In re Enforcement of N.J. False Claims Act Subpoenas, 444 N.J. Super. 566 (App. Div. 2016).)**

**Patterson, J. writing for the Court.**

The purely legal question posed in this appeal concerns the extent to which the New Jersey False Claims Act (NJFCA), N.J.S.A. 2A:32C-1 to -15, -17 to -18, permits the Attorney General to continue to utilize the NJFCA's administrative subpoena power once his right to intervene in a qui tam action has expired. Specifically, the Court considers the propriety of an order that directed appellants John Henderson and Arthur Nardin and intervenors Medco Health Solutions, Inc., and Express Scripts Holding Co. to comply with administrative subpoenas issued by the Acting Attorney General (the Attorney General) pursuant to the NJFCA.

In August 2011, Paul Denis, a former Medco employee (hereafter "the relator"), commenced a qui tam action—under seal—in the United States District Court for the District of Delaware. Two years later, the relator amended his complaint to assert claims on behalf of the State of New Jersey; he alleged that Medco, the pharmacy benefits manager for the State's employee health benefits programs, perpetrated a massive fraud on the State and other governmental entities by retaining rebates it was required to pass through to its clients, in violation of the federal False Claims Act, 31 U.S.C.A. §§ 3729 to 3733, and the NJFCA.

Pursuant to N.J.S.A. 2A:32C-5(d), the Attorney General was required to determine, within sixty days of service of the amended complaint, whether to intervene and take control of the State's claims. This sixty-day period may be extended by motion, N.J.S.A. 2A:32C-5(f), and the record reveals the Attorney General's office repeatedly took advantage of this opportunity; extensions granted by the district judge in the qui tam action totaled approximately 600 days. When yet another extension was sought on March 6, 2015, the district judge granted it but also declared that the "final intervention deadline" would be June 2, 2015.

Medco was timely served with a subpoena and, to the extent it could be argued it did not comply—a matter in dispute—the Attorney General did not seek enforcement within the extended time period permitted by the district judge. Moreover, there is no dispute Henderson and Nardin were not served with subpoenas until July 22, 2015— seven weeks after the deadline's expiration and the unsealing of the qui tam complaint.

When the district judge's extended deadline expired, appellants refused to comply with the Attorney General's tardy subpoenas. In September 2015, Medco filed—and Henderson and Nardin joined in—a motion in federal court for a protective order. While opposing Medco's motion, the Attorney General sought—by way of the civil action at hand—enforcement of his subpoenas. The chancery judge entered an enforcement order.

The Appellate Division reversed the trial court's judgment in a published decision. 444 N.J. Super. 566 (App. Div. 2016). The panel concluded that with the passing of the intervention deadline and the unsealing of the qui tam complaint, the NJFCA precluded the issuance and enforcement of subpoenas for the purpose of investigating the false claim or claims alleged in the qui tam action.

The panel cited N.J.S.A. 2A:32C-5(g)'s requirement that, **"before the expiration"** of that 60-day period or any permitted extension, the Attorney General **"shall"** either proceed with the action or decline to proceed with the action. The NJFCA provides the Attorney General with no further options, the panel stated. The panel reasoned that N.J.S.A. 2A:32C-14(a) sets forth the administrative investigatory powers granted the Attorney General but does

1

not provide an additional or separate font of power once the Attorney General declines the right to intervene in a qui tam action within the prescribed timeframe. The panel further noted that N.J.S.A. 2A:32C-6(f) limits the Attorney General's rights once he has decided "not to proceed" with the qui tam action and found that, once the relator is placed in control of the litigation, the NJFCA clearly presupposes that the Attorney General must stand down.

Mindful that the control of qui tam discovery proceedings rests with the federal court, the panel also determined that matters of comity counsel against authorizing a separate collateral investigation by the Attorney General. The panel recognized that the Attorney General retains the opportunity to seek intervention upon good cause shown in the qui tam action but found that the NJFCA does not give the Attorney General the right to investigate the allegations of the qui tam action by way of administrative subpoena or through the conducting of ex parte interviews of witnesses as otherwise would have been permitted before he declined to intervene as of right.

The Court granted leave to appeal. 227 N.J. 375 (2016).

**HELD**: The Court concurs with the Appellate Division panel's conclusion that the language of the NJFCA does not authorize the Attorney General to invoke his or her administrative subpoena power in a given matter after the right to intervene in the qui tam action has expired. After the Attorney General declines to intervene in a qui tam action pursuant to N.J.S.A. 2A:32C-5(g) and leaves that action in the relator's control, the Attorney General loses the authority conferred by N.J.S.A. 2A:32C-14(a) to issue administrative subpoenas.

1. The Court comments on the State's contention that a comparison of the NJFCA and its federal counterpart, the False Claims Act (FCA), 31 U.S.C.A. §§ 3729 to 3733, demonstrates the Legislature's intent to authorize the Attorney General to issue administrative subpoenas, whether or not the Attorney General intervenes in the action. The FCA expressly bars the United States Attorney General from issuing investigative demands following an election not to intervene in a particular action. 31 U.S.C.A. §§ 3730(b)(4), 3733(a)(1). The Court disagrees with the Attorney General's argument that, because the NJFCA does not include the federal law's specific language imposing that time limitation, the New Jersey Legislature must have intended to confer on the Attorney General the power to issue administrative subpoenas even after he or she elects not to intervene. (pp. 2-3)

2. The NJFCA's provision authorizing administrative subpoenas, N.J.S.A. 2A:32C-14(a), tracks neither the structure nor the text of the FCA discovery provision, 31 U.S.C.A. § 3733(a)(1). The fact that N.J.S.A. 2A:32C-14(a) does not mirror the precise wording of the FCA's temporal limitation on the United States Attorney General's authority to issue subpoenas is therefore not evidence of the Legislature's intent to grant the New Jersey Attorney General such authority in perpetuity. (pp. 3-4)

3. There is compelling evidence of legislative intent in the structure and language of the NJFCA itself. The Attorney General's decision not to intervene in a qui tam case is final, and the relator is afforded the right to conduct the action. N.J.S.A. 2A:32C-6(f). The NJFCA thus envisions a limited time period during which the Attorney General may investigate an alleged violation of the statute; the administrative subpoena is at his or her disposal at this pivotal stage. N.J.S.A. 2A:32C-5, -14(a). When that time period expires without intervention, the Attorney General's authority to serve administrative subpoenas pursuant to N.J.S.A. 2A:32C-14(a) expires with it. (pp. 4-6)

The judgment of the Appellate Division is **AFFIRMED**.

**JUSTICE FERNANDEZ-VINA, DISSENTING,** expresses the view that the plain language of N.J.S.A. 2A:32C-14 does not limit the Attorney General's power to issue subpoenas following the unsealing of a qui tam complaint or an intervention decision. The temporal limitations in the FCA do not appear in the NJFCA, and, in Justice-Fernandez-Vina's view, the Legislature's election to depart from the federal False Claims Act in this respect evidences legislative intent not to impose a requirement that the Attorney General issue subpoenas before the unsealing of a qui tam complaint or an intervention decision. Further, there is no conflict between N.J.S.A. 2A:32C-5(g) and N.J.S.A. 2A:32C-6(f), and N.J.S.A. 2A:32C-14, according to Justice Fernandez-Vina.

**CHIEF JUSTICE RABNER and JUSTICE SOLOMON join in JUSTICE PATTERSON's opinion. JUSTICE FERNANDEZ-VINA filed a separate, dissenting opinion, in which JUSTICE LaVECCHIA joins. JUSTICES ALBIN and TIMPONE did not participate.**

IN THE MATTER OF THE
ENFORCEMENT OF NEW JERSEY
FALSE CLAIMS ACT SUBPOENAS


Argued March 13, 2017 – Decided June 7, 2017

On appeal from the Superior Court,
Appellate Division, whose opinion is
reported at 444 N.J. Super. 566 (App. Div.
2016).

John M. Falzone, Assistant Attorney General,
argued the cause for appellant (Christopher
S. Porrino, Attorney General of New Jersey,
attorney; Andrea M. Silkowitz, Melissa H.
Raksa and Brian F. McDonough, Assistant
Attorneys General, of counsel; John M.
Falzone, Joan E. Karn, Janine Matton and
Kent D. Anderson, Deputy Attorneys General,
on the briefs).

Kevin H. Marino argued the cause for
respondent Arthur Nardin (Marino, Tortorella
& Boyle, attorneys; Kevin H. Marino and John
A. Boyle on the brief).

Elizabeth J. Hampton argued the cause for
respondent John Henderson (Fox Rothschild,
attorneys; Elizabeth J. Hampton and Alain
Leibman of counsel and on the brief).

Lawrence S. Lustberg argued the cause for
intervenors Medco Health Solutions, Inc. and
Express Scripts Holding Co. (Gibbons,
attorneys; Lawrence S. Lustberg, Amanda B.
Protess, Jennifer G. Wicht and Holly M.
Conley, on the brief).

JUSTICE PATTERSON delivered the opinion of the Court.

We affirm the decision of the Appellate Division panel, substantially for the reasons stated in Judge Fisher's comprehensive opinion, reported at 444 N.J. Super. 566, 572-75 (App. Div. 2016). We concur with the panel's conclusion that the language of the New Jersey False Claims Act (NJFCA), N.J.S.A. 2A:32C-1 to -15, -17 to -18, does not authorize the Attorney General to invoke his or her administrative subpoena power in a given matter after the right to intervene in the qui tam action has expired. Id. at 572-73 (citing N.J.S.A. 2A:32C-5(g), -6(f), -14(a)). We share the panel's view that after the Attorney General declines to intervene in a qui tam action pursuant to N.J.S.A. 2A:32C-5(g) and leaves that action in the relator's control, the Attorney General loses the authority conferred by N.J.S.A. 2A:32C-14(a) to issue administrative subpoenas. Id. at 572-74.

We briefly comment on the State's contention that a comparison of the NJFCA and its federal counterpart, the False Claims Act (FCA), 31 U.S.C.A. §§ 3729 to 3733, demonstrates the Legislature's intent to authorize the Attorney General to issue administrative subpoenas, whether or not the Attorney General intervenes in the action. That argument is premised on the FCA's provision authorizing the United States Attorney General to issue investigative demands for documentary evidence, responses to interrogatories, oral testimony, or "any

2

combination of such material, answers, or testimony." 31 U.S.C.A. § 3733(a)(1). The FCA provides that any such demands must be served before the Attorney General "commenc[es] a civil proceeding under section 3730(a) or other false claims law, or mak[es] an election under section 3730(b)" of the federal statute. Ibid. The "election" to which the FCA refers is the Attorney General's decision whether or not to intervene in a qui tam action. 31 U.S.C.A. § 3730(b)(4). Thus, the FCA expressly bars the United States Attorney General from issuing investigative demands following an election not to intervene in a particular action.

Here, the Attorney General argues that, because the NJFCA does not include the federal law's specific language imposing that time limitation, our Legislature must have intended to confer on the Attorney General the power to issue administrative subpoenas even after he or she elects not to intervene. We disagree.

This is not a setting in which our Legislature has used a federal statute as a model for a counterpart provision and replicated its language but deleted a portion of the text, which would evince legislative intent to diverge from the federal approach in that specific respect. See Airwork Serv. Div. v. Dir., Div. of Taxation, 97 N.J. 290, 294 (1984), cert. denied 471 U.S. 1127, 105 S. Ct. 2662, 86 L. Ed. 2d 278 (1985) ("Where

the Legislature adopts a new law, using as a source a statute theretofore enacted in another jurisdiction, but omits a provision of the source statute, the omission is construed as being deliberate." (quotation omitted)).  To the contrary, the NJFCA's provision authorizing administrative subpoenas, N.J.S.A. 2A:32C-14(a), tracks neither the structure nor the text of the FCA discovery provision, 31 U.S.C.A. § 3733(a)(1).[1]  The fact that N.J.S.A. 2A:32C-14(a) does not mirror the precise wording of the FCA's temporal limitation on the United States Attorney General's authority to issue subpoenas is therefore not evidence of the Legislature's intent to grant the New Jersey Attorney General such authority in perpetuity.  In short, the federal statute offers little guidance on the specific issue raised in this case.

We find, however, compelling evidence of legislative intent in the structure and language of the NJFCA itself.  The NJFCA addresses administrative subpoenas in N.J.S.A. 2A:32C-14(a),

---

[1]  The two statutes, for example, use different terminology to describe the discovery demands that the Attorney General may serve:  the FCA uses the term "civil investigative demand," 31 U.S.C.A. § 3733(a)(1), and the NJFCA refers to the demands as "subpoenas," N.J.S.A. 2A:32C-14(a).  The federal and state statutes, further, do not confer identical authority to demand discovery:  although both the FCA and NJFCA authorize demands for oral testimony and documents, the FCA additionally authorizes the United States Attorney General to demand written answers to interrogatories.  Compare N.J.S.A. 2A:32C-14(a), with 31 U.S.C.A. § 3733(a)(1)(A) to (C).

4

which is invoked when "the Attorney General has reason to believe that a person has engaged in, or is engaging in, an act or practice which violates this act, or any other relevant statute or regulation." N.J.S.A. 2A:32C-14(a). The Legislature unambiguously provided a sixty-day time period for the Attorney General to conduct its review and elect to intervene, or not to intervene, in the action. N.J.S.A. 2A:32C-5(d), (g). During that period, the Attorney General clearly has the authority to issue subpoenas in accordance with N.J.S.A. 2A:32C-14(a).

The Attorney General's decision not to intervene in a qui tam case starkly alters the landscape. That decision is final, and the relator is afforded the right to conduct the action. N.J.S.A. 2A:32C-6(f). The NJFCA provision addressing proceedings after the Attorney General decides not to intervene permits the Attorney General access to pleadings, motions, and deposition transcripts to monitor the progress of the case, but grants the Attorney General no power to subpoena witnesses or documents after he or she declines to intervene. N.J.S.A. 2A:32C-6. If, as a result of monitoring a qui tam action conducted by the relator, the Attorney General learns of information that warrants his or her involvement, he or she can seek leave to intervene; the NJFCA authorizes the court, on a showing of good cause, to "permit the Attorney General to

intervene and take over the action on behalf of the State at a later date." N.J.S.A. 2A:32C-6(f).[2]

The NJFCA thus envisions a limited time period during which the Attorney General may investigate an alleged violation of the statute; the administrative subpoena is at his or her disposal at this pivotal stage. N.J.S.A. 2A:32C-5, -14(a). When that time period expires without intervention, the Attorney General's authority to serve administrative subpoenas pursuant to N.J.S.A. 2A:32C-14(a) expires with it.[3]

We therefore concur with the Appellate Division panel's determination that the trial court erred when it enforced the

_____

[2] After the unsealing of the complaint in this case, the Attorney General did not seek leave to intervene on a showing of good cause, pursuant to N.J.S.A. 2A:32C-6(f). Accordingly, we do not consider the scope of the Attorney General's investigative authority in the event that he or she is permitted to intervene in accordance with that provision.

[3] Our dissenting colleague characterizes our interpretation of N.J.S.A. 2A:32C-5(d), N.J.S.A. 2A:32C-5(g), N.J.S.A. 2A:32C-6(f), and N.J.S.A. 2A:32C-14(a) as an application of the canon of statutory construction by which a specific provision in a statute predominates over a general provision in the event that the two conflict. Post at ___ (slip op. at 10). That principle is not the basis for our construction of the NJFCA, or the Appellate Division's holding. See In re Enforcement of N.J. False Claims Act Subpoenas, 444 N.J. Super. 566, 572-74 (App. Div. 2016). Instead, we view the relevant provisions of the NJFCA to jointly express the Legislature's intent to afford to the Attorney General an opportunity to investigate a qui tam action using administrative subpoenas, and to limit that opportunity to the sixty-day period prior to the unsealing of the complaint. See N.J.S.A. 2A:32C-5(d), N.J.S.A. 2A:32C-5(g), N.J.S.A. 2A:32C-6(f), N.J.S.A. 2A:32C-14(a).

Attorney General's administrative subpoenas and ordered compliance with those subpoenas. The judgment of the Appellate Division is affirmed.

CHIEF JUSTICE RABNER and JUSTICE SOLOMON join in JUSTICE PATTERSON's opinion. JUSTICE FERNANDEZ-VINA filed a separate, dissenting opinion, in which JUSTICE LaVECCHIA joins. JUSTICES ALBIN and TIMPONE did not participate.

IN THE MATTER OF THE
ENFORCEMENT OF NEW JERSEY
FALSE CLAIMS ACT SUBPOENAS

JUSTICE FERNANDEZ-VINA dissenting.

As the majority correctly recognizes, whether the New Jersey False Claims Act (NJFCA), N.J.S.A. 2A:32C-1 to -18, places certain temporal limits on the Attorney General's subpoena power is a matter of statutory interpretation. I dissent because the majority fails to properly credit the plain language of N.J.S.A. 2A:32C-14, which does not limit the Attorney General's power to issue subpoenas following the unsealing of a qui tam complaint or an intervention decision. Even if we were to venture beyond the plain language of N.J.S.A. 2A:32C-14, there still would be no basis to conclude that the Attorney General's subpoena power is constrained in this manner.

I.

When interpreting a statute, a court's "overriding goal" is to discern legislative intent. Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 386 (2016) (quoting Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 586 (2013)). It is a well-established canon of statutory construction that the starting point for determining the Legislature's intent is the language

1

of the statute itself.  Ibid.  If the language is clear and unambiguous on its face, that is the end of the interpretive inquiry.  See ibid. ("'If the plain language leads to a clear and unambiguous result, then our interpretive process is over.' It is only when there is ambiguity in the language that we turn to extrinsic evidence, such as legislative history." (quoting Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 195-96 (2007))).

The provision of the NJFCA that governs the Attorney General's subpoena power, N.J.S.A. 2A:32C-14, provides in pertinent part that,

> a.  If the Attorney General has reason to believe that a person has engaged in, or is engaging in, an act or practice which violates this act, or any other relevant statute or regulation, the Attorney General or the Attorney General's designee may administer oaths and affirmations, and request or compel the attendance of witnesses or the production of documents.  The Attorney General may issue, or designate another to issue, subpoenas to compel the attendance of witnesses and the production of books, records, accounts, papers and documents.

A plain reading of this statutory text makes it crystal clear that the Attorney General has broad power to issue subpoenas. Other than the prerequisite that the State have a "reason to believe" a person has violated the NJFCA or "any other relevant statute or regulation," the text places no temporal restriction on the Attorney General's subpoena power.  Because the plain

2

language of N.J.S.A. 2A:32C-14 does not impose upon the Attorney General a requirement that subpoenas be issued before the unsealing of a qui tam complaint or an intervention decision, the Court should not place its own limits on the statute. Application of the plain language rule should be the end of the analysis.

## II.

Notwithstanding the clear statutory text, the majority posits that N.J.S.A. 2A:32C-14 is ambiguous and holds that the NJFCA establishes a temporal limitation on when the Attorney General may issue subpoenas. The majority's position violates accepted principles of statutory construction. See, e.g., State v. Smith, 197 N.J. 325, 332 (2009) ("Plainly, courts are not to read into a statute words that were not placed there by the Legislature."). Moreover, even looking beyond the plain language of N.J.S.A. 2A:32C-14, there is still no support for the majority's conclusion.

## A.

Relative to the federal False Claims Act, 31 U.S.C.A. 3729 to 3733, the NJFCA was enacted quite recently. Compare 12 Stat. 696 (Feb. 25, 1863), and United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co., 944 F.2d 1149, 1153 (3d. Cir. 1991) (noting the federal "False Claims Act was adopted in 1863"), with L. 2007, c. 265 (approved Jan. 13,

2008), and State ex rel. Hayling v. Corr. Med. Servs., Inc., 422 N.J. Super. 363, 367 (App. Div. 2011) (recognizing the NJFCA "was enacted on January 13, 2008"). A cardinal rule of statutory interpretation is that courts should "presume a legislature had existing federal statutes on the same subject in mind when enacting a state statute." Norman J. Singer & J.D. Shambie Singer, 2B Sutherland Statutory Construction § 51:6 (7th ed. 2008). Indeed, the statute's legislative history makes clear that the Legislature had the federal False Claims Act in mind when it adopted the NJFCA. See e.g., Hayling, supra, 422 N.J. Super. at 372 (quoting NJFCA co-sponsor, Assemblyman Herb Conaway, Jr., describing the Act to the General Assembly's Judiciary Committee "as New Jersey's whistle blower statute which tracks the federal law"). Although the Appellate Division in Hayling, declined to give interpretive weight to the Assemblyman's statement in considering whether the NJFCA should be given retroactive effect, the statement nonetheless demonstrates that the NJFCA is modeled on the similarly worded federal False Claims Act.

The section of the federal False Claims Act that governs the use of civil investigative demands (CIDs) is 31 U.S.C.A.

§ 3733.[4] That section stipulates that "the [U.S.] Attorney General, or a designee, may, <u>before commencing a civil proceeding under section 3730(a) or other false claims law, or making an election under section 3730(b)</u>, issue in writing and cause to be served upon such person, a [CID]." <u>Ibid.</u> (emphasis added). Thus, the federal False Claims Act, after which the NJFCA was modeled, expressly limits the use of CIDs to the time period before the Attorney General makes an election whether to intervene in a qui tam action or commences a false claims action. Those same temporal limitations simply do not appear in the NJFCA. The Legislature's election to depart from the federal False Claims Act in this respect evidences legislative intent not to impose a requirement that the Attorney General issue subpoenas before the unsealing of a qui tam complaint or an intervention decision. <u>See</u> <u>Airwork Serv. Div., Div. of Pac. Airmotive Corp. v. Director, Div. of Taxation</u>, 97 <u>N.J.</u> 290, 294 (1984) ("Where the Legislature adopts a new law, using as a source a statute theretofore enacted in another jurisdiction, but omits a provision of the source statute, the omission is construed as being deliberate." (citation omitted)), <u>cert. denied</u>, 471 <u>U.S.</u> 1127, 105 <u>S. Ct.</u> 2662, 86 <u>L. Ed.</u> 2d 278 (1985).

---

[1] "A CID is analogous to an investigative subpoena." <u>FTC v. Mfrs. Hanover Consumer Servs., Inc.</u>, 543 <u>F. Supp.</u> 1071, 1073 (E.D. Pa. 1982).

Notably, the Legislature has <u>twice</u> declined to follow the federal False Claims Act's CID provision and place time restrictions on the New Jersey Attorney General's subpoena power.  When the NJFCA was first promulgated in 2008, the federal False Claims Act limited the U.S. Attorney General's power to issue CIDs to the period "before commencing a civil proceeding," 31 <u>U.S.C.A.</u> § 3733(a)(1) (2007), but our State's Legislature declined to incorporate any such restriction into the NJFCA.

In 2009, Congress "clarified" the language of the federal False Claims Act, including 31 <u>U.S.C.A.</u> § 3733(a)(1), by amending it to its current form.  <u>See</u> Appendix to Letter from Brian A. Benczkowski, Off. of Legis. Aff., U.S. Dep't of Justice, to Sen. Patrick J. Leahy 15-16 (Feb. 21, 2008), https://www.justice.gov/archive/ola/views-letters/110-2/02-21-08-s2041-false-claims-correction-act.pdf (recommending that Congress "clarify that the [U.S.] Attorney General (or his designee) may issue CIDs in connection with a qui tam action prior to the Government's election to intervene or decline to intervene in that action"); <u>see also</u> <u>Pub. L. No.</u> 111-21, § 4, 123 <u>Stat.</u> 1616 (amending CID provision in section entitled "CLARIFICATIONS TO THE FALSE CLAIMS ACT TO REFLECT THE ORIGINAL INTENT OF THE LAW" "by striking 'the Attorney General may, before commencing a civil proceeding under section 3730 or other

6

false claims law,' and inserting 'the Attorney General, or a designee, may, <u>before commencing a civil proceeding</u> under section 3730(a) or other false claims law, <u>or making an election under section 3730(b)'"</u> (emphasis added)).

In 2010, after that federal clarification, the New Jersey Legislature amended the NJFCA to align it more closely with the federal False Claims Act.  <u>See</u> <u>Sponsor's Statement to S. 2534</u> 4 (<u>L.</u> 2009, <u>c.</u> 265 (approved Jan. 17, 2010)).  Although it amended several provisions of the NJFCA in response to Congress's amendments to the federal False Claims Act, the Legislature chose not to modify the NJFCA in one key respect:  it did not revise <u>N.J.S.A.</u> 2A:32C-14(a), the provision governing the New Jersey Attorney General's subpoena power.  Thus, even though Congress amended 31 <u>U.S.C.A.</u> § 3733(a)(1), our State Legislature again declined to adopt the time limitations Congress placed on the federal subpoena power.[5]  Accordingly, insofar as <u>N.J.S.A.</u> 2A:32C-14(a) is ambiguous concerning temporal restrictions placed on the Attorney General's subpoena power, the legislative

---

[2]  In contrast to New Jersey, other states have adopted the time limitations that Congress placed on the U.S. Attorney General's CID power by including such restrictions in their own state statutes.  <u>See, e.g.,</u> <u>Ga. Code Ann.</u> § 23-3-125(b)(1) (2017) (limiting Georgia Attorney General's power to issue CID to time period before commencing civil action or making election to intervene); 740 <u>Ill. Comp. Stat.</u> 175/6(a)(1) (2017) (same); <u>Mass. Gen. Laws</u> ch. 12, § 5N(1) (2017) (same).

7

history of the NJFCA should dissipate any doubts as to the Legislature's intent.

B.

In addition, it is clear that the Legislature knew how to include time limitations on the Attorney General's investigatory powers because the Legislature has done so elsewhere. For example, our State's racketeering statute limits the Attorney General's issuance of investigative interrogatories to "prior to the institution of a civil or criminal proceeding." N.J.S.A. 2C:41-5(a). Likewise, New Jersey's antitrust statute limits the Attorney General's issuance of subpoenas to "prior to the institution of a criminal or civil action." N.J.S.A. 56:9-9(a)(1).

When the Legislature imposes certain limits on the Attorney General's investigative powers in some statutes but excludes those limits in others, such restrictions should not be inferred where excluded. See Richerson v. Jones, 551 F.2d 918, 928 (3d Cir. 1977) ("[W]here a statute with respect to one subject contains a given provision, the omission of such provision from a similar statute is significant to show a different intention existed." (quoting Gen. Elec. Co. v. S. Const. Co., 383 F.2d 135, 139 (5th Cir. 1967), cert. denied, 390 U.S. 955, 88 S. Ct. 1049, 19 L. Ed. 2d 1148 (1968))). The NJFCA's silence on temporal restrictions in the face of the Legislature's decision

8

to impose time limits on the Attorney General's investigative powers in the State's racketeering and antitrust laws reinforces the legislative intent not to limit the Attorney General's subpoena power in this manner when investigating false claims.

C.

Finally, we have "consistently stated that[,] '[i]n reading and interpreting a statute, primary regard must be given to the fundamental purpose for which the legislation was enacted.'" State v. Tischio, 107 N.J. 504, 511 (1987) (quoting N.J. Builders, Owners & Managers Ass'n v. Blair, 60 N.J. 330, 338 (1972)), appeal dismissed, 484 U.S. 1038, 108 S. Ct. 768, 98 L. Ed. 2d 855 (1988). The text of the NJFCA tells us that it is remedial legislation. N.J.S.A. 2A:32C-17 ("This Act shall be liberally construed to effectuate its remedial and deterrent purposes."); cf. United States v. Neifert-White Co., 390 U.S. 228, 233, 88 S. Ct. 959, 962, 19 L. Ed. 2d 1061, 1065 (1968) (noting that federal False Claims Act is "remedial" and "should not be given [a] narrow reading").

A basic rule of statutory interpretation is that remedial statutes should be construed broadly to effectuate their intended purpose. Smith v. Millville Rescue Squad, 225 N.J. 373, 390 (2016) (noting that remedial legislation should be "liberally construed"); Young v. Schering Corp., 141 N.J. 16, 25 (1995) ("Where the Legislature's intent is remedial, a court

should construe a statute liberally."). By reading a temporal limitation into the NJFCA's subpoena provision, the majority narrowly construes a significant tool that the Attorney General routinely utilizes to combat fraud and abuse in State programs and procurement. The majority's reasoning, therefore, runs contrary to yet another fundamental rule of statutory construction.

### III.

In holding that the NJFCA limits the Attorney General's power to issue subpoenas following the unsealing of a qui tam complaint or an intervention decision, the majority points to N.J.S.A. 2A:32C-5 and N.J.S.A. 2A:32C-6. Specifically, the majority highlights sections 5(g) and 6(f) of the NJFCA. The majority suggests that those specific provisions should prevail over the more general provision governing subpoenas. In concluding that sections 5(g) and 6(f) impose temporal parameters around the Attorney General's subpoena power, the majority misapprehends the interplay between those statutory provisions and N.J.S.A. 2A:32C-14.

The "specific-over-general" maxim upon which the majority relies applies only "when there is a conflict between general and specific provisions of a statute." Wilson v. Unsatisfied Claim & Judgment Fund Bd., 109 N.J. 271, 278 (1988); see also In re Phila. Newspapers, LLC, 599 F.3d 298, 307 (3d Cir. 2010)

10

("Considering the application of the canon 'the specific governs the general,' the [Supreme] Court reasoned that it only applied where the more specific provision clearly placed a limitation on the general." (citing Varity Corp. v. Howe, 516 U.S. 489, 511, 116 S. Ct. 1065, 1077, 134 L. Ed. 2d 130, 148 (1996))).[6]

Here, there is no conflict between N.J.S.A. 2A:32C-5(g) and N.J.S.A. 2A:32C-6(f), and N.J.S.A. 2A:32C-14.  Section 5(g) sets limits on the seal period and the Attorney General's time to decide to intervene as of right, not on his time to investigate. The majority reasons that if the Attorney General were allowed to issue subpoenas after a qui tam lawsuit is unsealed, or after the time for making the initial intervention decision as of right, the 60-day period in section 5(g) would be rendered nugatory.  This argument erroneously presupposes that subpoenas can be issued only to determine whether to intervene as of right in a qui tam suit.  The NJFCA makes clear that the Attorney General can investigate a relator's claims for purposes other than intervention in a qui tam suit.  See N.J.S.A. 2A:32C-14(a) (providing that Attorney General may issue subpoenas if he or

---

[3]  Accord TracFone Wireless, Inc. v. Comm'n on State Emergency Commc'ns, 397 S.W.3d 173, 181 (Tex. 2013) ("But the specific-over-general canon applies only when two statutory provisions are irreconcilable."); Wik v. Wik, 681 P.2d 336, 340 (Alaska 1984) ("The rule . . . is that a statute dealing with specific subject matter in a detailed way prevails over a more general statute only if the two statutes cannot be harmonized.").

11

she "has reason to believe that a person has engaged in . . . an act or practice which violates this act, <u>or any other relevant statute or regulation</u>" (emphasis added)); <u>N.J.S.A.</u> 2A:32C-6(h) (stipulating that "application of one civil remedy . . . shall not preclude the application of any other remedy, civil, administrative or criminal"). Hence, reading the NJFCA to impose no time limit on the Attorney General's subpoena power does not render section 5(g) meaningless.[7]

In addition, section 6(f), which permits the Attorney General to seek intervention at any time upon a showing of good cause, does not conflict with <u>N.J.S.A.</u> 2A:32C-14. By allowing intervention for good cause after the seal has been lifted, section 6(f) recognizes that the Attorney General might uncover additional information through continued investigation that would prompt him to intervene later in the matter. One avenue by which the Attorney General could uncover additional information is through the subpoena power granted by <u>N.J.S.A.</u>

---

[4]  Furthermore, the federal corollary to 5(g), 31 <u>U.S.C.A.</u> § 3730(b)(4), is almost identical, yet Congress placed the temporal limit on the U.S. Attorney General's subpoena power in 31 <u>U.S.C.A.</u> § 3733(a)(1). <u>See</u> <u>supra</u> Part II.A. This illustrates that the U.S. Attorney General's subpoena power is limited by the federal False Claims Act's subpoena provision, not its intervention provision. Consequently, the majority's scrutiny of the NJFCA's intervention provision, section 5(g), for a time constraint on the Attorney General's subpoena power is an inapt endeavor; the more natural place for such a limit would be in the statute's subpoena provision, <u>N.J.S.A.</u> 2A:32C-14.

12

2A:32C-14.  Section 6(f) and N.J.S.A. 2A:32C-14 thus do not conflict.  If anything, section 6(f) undermines the majority's holding that the Attorney General's power to issue subpoenas is extinguished by the unsealing of a qui tam complaint or an intervention decision.

For those reasons, I respectfully dissent from the judgment of the Court.